## Warrener v. Federal Land Bank of Louisville.

(Decided Dec. 18, 1936.)

JOHN L. STOUT and R. H. LEE for appellant.

CHAS. R. BELL, MARTIN R. GLENN and ROGER D. BRANI-GIN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

In the mortgage executed by E. B. Warrener to the Federal Land Bank of Louisville to secure an indebtedness for a loan of $10,800, he covenanted and agreed to keep the buildings insured in the sum of $6,300. The bank expressly reserved the right to take out the insurance itself for the purpose of protecting the parties if he should not do so, the policies to be delivered to it, and the premiums if not paid by the mortgagor to be charged as a lien on the land similar and to the same effect as the original loan. At the time the loan was made the mortgagor had $8,000 insurance on the dwelling, and $2,000 on several barns. On September 24, 1934, that insurance was canceled, as he was later advised, and on October 17th the bank wrote Warrener as follows:

"By reason of our failure to receive insurance in connection with the above loan, it has become necessary for this bank to secure a policy covering your property in accordance with the requirements of your mortgage.

"The policy covers as follows, with a premium charge of $48.30:

"Fire and Windstorm
"On Dwelling   $4800.00
"On Barn     300.00
"Insurance expires 9/17/37

"Please forward your check at once for the above premium. By the payment of this amount your insurance is paid in full for a period of three years.

"Yours very truly,
"G. C. Hays,
"Manager Insurance Division

"In case of loss notify us immediately—giving estimate of damage and which building is involved."

On January 4th following, the dwelling was destroyed by fire. Shortly afterwards the bank advised Warrener that he was insured and instructed him to indorse the checks in settlement and send to it for credit. Thereafter the bank billed him for $48.30 premium, and he paid that sum to it. Warrener relied on the statements of the bank that there was insurance on his property and that it held the policies as the mortgage required, with a lien on the property to secure the payment of the premium under its terms. He made no effort to provide fire insurance on the buildings, as he would have done. In the exercise of its rights, as set forth in the mortgage, the bank had entered upon the performance of the service and procured a policy of windstorm insurance on the dwelling for $4,800, and on the barn for $300. It had also procured a $2,000 policy of fire insurance on the dwelling. The dwelling was of greater value than $4,800. In violation of its contract and its agreement, assurance and promises to the mortgagor, the bank had negligently failed to take out the fire insurance on the dwelling and had negligently allowed it to go unprotected. As the proximate cause of

that negligence Warrener had suffered a loss of $4,800. Warrener had relied upon the statements contained in the letter quoted above and was misled by its representations and the failure to perform the services the bank had undertaken, entered upon and partially done.

The foregoing is a synthesis of a petition, and amendment, filed by Warrener against the Federal Land Bank, in which he prayed judgment for $4,800, with interest from the date of the fire. A demurrer challenging the sufficiency was sustained and in the absence of further pleading it was dismissed. Warrener prosecutes an appeal.

In short, it is alleged that the bank under a contract right had undertaken to protect fully the property by insurance, but through negligence had done so only partially; nevertheless, it had advised the mortgagor that it had procured fire insurance on his dwelling for $4,800 for three years for their mutual protection, and had called for and received payment of the premium by the mortgagor. He had relied upon that statement and had not protected his property. The bank, however, had not done what it represented, and this resulted in the mortgagor's loss. The suit seems to be based upon both negligence and deceit.

1. We may dispose, first, of the proposition that the appellee is not suable and cannot be held liable as an insurer or otherwise.

Federal Land Banks were created by Congress by the Federal Farm Loan Act of 1916 (39 Stat. 360, see 12 U. S. C. A. secs. 671-734). It was adopted in response to a national demand for such a rural credit system. Federal Land Bank v. Gaines, 290 U. S. 247, 54 S. Ct. 168, 78 L. Ed. 298. The constitutionality of the act was sustained on the ground that the banks were made fiscal agencies of the government, in that they may be depositories of public moneys and purchasers of government bonds, although they have been granted banking powers of a limited character, particularly to facilitate the making of loans upon farm security at low rates of interest. Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577. In Federal Land Bank v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 709, 79 L. Ed. 1408, a real estate broker sued the bank

to recover a commission, and obtained an attachment. The bank pleaded its immunity from mesne process of attachment by virtue of its organization and functions under the statutes of the United States. The Supreme Court of Arkansas denied the claim of sovereign immunity (189 Ark. 438, 74 S. W. [2d] 222), and the case went to the Supreme Court of the United States. The court pointed out that section 4 of the Federal Farm Loan Act (12 U. S. C. A. sec. 676) provides that Federal Banks "shall have power * * * to sue and be sued, complain, interplead, and defend, in any court of law or equity, as fully as natural persons," and said that although concededly they were federal instrumentalities, yet they possessed characteristics of private business corporations. The decision was that when such a bank acts in a nongovernmental capacity, or as a private corporation, there is an express waiver of immunity by Congress, and it is "subject to the incidents of suit, including attachment and execution," as fully as natural persons.

Therefore, in such a suit as the one at bar, the defendant bank is held to the same accountability as would an institution having no relation to the federal government, although the terms, conditions, and limitations of the Federal Farm Loan Act should control where there is any conflict between them and the state law. Missouri, K. & T. Ry. Co. v. Walston, 37 Okl. 517, 133 P. 42; Federal Land Bank of Berkeley v. Warner, 42 Ariz. 201, 23 P. (2d) 563.

The act merely provides that every borrower shall undertake to keep his buildings insured, with the insurance made payable to the bank as its interest may appear. 12 U. S. C. A. sec. 771, subsec. 9. We find nothing therein which restricts such a bank from entering into a contract giving it the option to procure such insurance at the expense of the borrower or from exercising that right. Whether a federal land bank could insure property and assume the obligations of an insurer is a question not involved. This action seeks no recovery from it as an insurer. It is a tort action. The basis upon which recovery is sought is (1) misfeasance in its undertaking, and (2) deceit. We are of opinion that the appellee is not exempt from responsibility by reason of its corporate nature or any limitations in the

act by which it was created and under which it exists. Cf. Elkhart County Nat. Farm Loan Assn. v. Heilman, 196 N. E. 350.

2. The mortgage placed no duty or obligation upon the bank to insure the property. That duty rested upon the mortgagor, and he could not as a matter of legal power under the contract shift the responsibility to the mortgagee. But there was an option given the mortgagee "to buy said insurance and pay the premiums therefor," the same being payable by the mortgagor immediately, or, in default, chargeable as a further lien debt. It is elementary that a duty is a prerequisite to a liability. So long as there was but an unaccepted optional right there was no duty. It was for the bank to choose to exercise or not to exercise that right. Mammoth Garage v. Taylor, 220 Ky. 499, 295 S. W. 429; McQuilkin v. Ford, 101 Neb. 474, 163 N. W. 763; Spokane Merchants' Association v. Parry, 60 Wash. 204, 110 P. 991; Southern Building & Loan Association of Knox County v. Miller, 110 F. 35, 49 C. C. A. 21; Schafer v. Jackson, 155 Iowa, 108, 135 N. W. 622. Upon the failure of the mortgagor to keep his contract in this respect, the bank had, it seems to us, the right of election to (1) waive the omission and let the property remain uninsured; (2) procure the insurance itself; or (3) pursue some other course stipulated in the contract for its breach. If and when it elected to procure the insurance at the expense of the morgagor, it must have been done in accordance with the terms of the contract. Those terms are that the policy should provide for the loss being payable to the mortgagee as "its interest may appear at the time of the loss." Any sum received in settlement of the insured loss, according to the mortgage, could be applied by the mortgagee "to discharge any portion of the indebtedness secured hereby, whether or not the same be due and payable, or to the reconstruction of the building destroyed or damaged."

When the mortgagee made its election it was not to be and was not for its sole benefit, but for the mutual benefit of the parties—for the mortgagor, in the reduction of his debt or replacement of his building; for the mortgagee, in the payment in whole or in part of its demand, whose security had been thus reduced, or the restoration of that part of its security which had been

destroyed. No one could claim, for instance, if the debt had been reduced below the amount of the insurance proceeds, that the mortgagee could have received or retained the excess. Thus the mortgagor had a vital interest in the action which the pleadings state was undertaken by the mortgagee. See Holt v. Mahoney, 208 Ky. 330, 270 S. W. 795; 19 R. C. L. 405; 2 C. J. 433, 717, 723.

Such being the contract, and under the allegations of the petition such being the undertaking, it seems to us the authorities relied on to establish the right of a mortgagee to protect only its own interest by the further security of insurance on the property at its own expense are not in point. See Couch's Ency. of Insurance Law, vol. 1, sec. 485.

We come to the matter of no consideration. Up to the point or time when the bank undertook to procure the insurance under its right of election, there could have been no responsibility, but when it set about to do so the provisions of the mortgage passed from being an optional right to an assumed duty. By undertaking the commission it became the mortgagor's agent, although it could not have been compelled to assume that relation. It was not only looking after its own interests, but it was looking after his interests as well.

An agreement by the mortgagee to insure the property is valid when based upon a sufficient consideration, and he must act in good faith and use reasonable care, since it is his duty to see that the insurance is validly placed. Couch's Ency. of Insurance Law, sec. 1215; 19 R. C. L. 404. It has been held that the mortgage itself is a good consideration, in that it affords increase of security on the one hand, and the agreement of the mortgagor to pay the premiums on the other. But that would seem to have been .or to be where the insurance transaction was, or is, contemporaneous with the execution of the mortgage. Seaman v. Rindge, Kalmbach Logie & Co., 195 Mich. 417, 161 N. W. 919; Hudson v. Ellsworth, 56 Wash. 243, 105 P. 463, 465; Jones on Mortgages, sec. 511; Cf. United States Bond .& Mortgage Corp. v. Berry, 249 Ky. 610, 61 S. W. (2d) 293; Lincoln Bank & Trust Co. v. Harthill, 257 Ky. 39, 77 S. W. (2d) 394. In Hudson v. Ellsworth, supra, after the delivery

of a mortgage the mortgagee agreed to have the dwelling insured for $2,500, in consideration of the payment of the premium by the mortgagor. The amount was paid to the mortgagee, but he failed to have the property insured. It burned, and the mortgagor sued the mortgagee to recover the amount of the insurance agreed upon, asserting that in reliance upon the latter's promise to insure the property he had not done so. Holding that the acceptance of the amount of the premium would only render the mortgagee liable for its return, and that the agreement to have the property insured merely created a gratuitous agency because there was no consideration, recovery was denied. This was because there had been no entering upon performance. The court very clearly expressed that as being the basis of its decision, and pointed out that there is no liability when the agency is gratuitous "unless the agent has entered upon the performance of the service."

We look to the law where the performance of the service has been entered upon. As is stated in Meyerson v. New Idea Hosiery Co., 217 Ala. 153, 115 So. 94, 97, 55 A. L. R. 1236:

"It is a familiar principle of the law of agency that, when one party intrusts the transaction of a matter of business to another who enters upon the execution of his agency, though the undertaking is gratuitous, and does it amiss through want of due care, and as a proximate consequence of such negligence damage ensues to the principal, the agent is liable to the principal in an action on the case as for such misfeasance."

It is also pertinently said in a note, 4 A. L. R. 1196:

"While a mere agreement to undertake a trust in futuro, without compensation, is not obligatory, yet, when once undertaken and the trust actually entered upon, the bailee is bound to perform it according to the terms of his agreement. The confidence which is placed in him, and his undertaking to execute the trust, raise a sufficient consideration; a contrary doctrine would tend to injure and deceive his employer, who might be unwilling to consent to the bailment on any other terms. Rutgers v. Lucet [1800] 2 Johns. Cas. [N. Y.] 92; Jenkins

v. Bacon [1873] 111 Mass. 373, 15 Am. Rep. 33, 1 'Am. Neg. Cas. 781.''

In our own 'opinion of McGee v. Bast, 29 Ky. (6 J. J. Marsh.) 453, it is pointed out that the common law adopted the maxim of the civil law ex nudo pacto non oritur actio—a person is under no legal obligation to perform a gratuitous promise—and that for mere non-feasance a party will not be legally responsible on an assumpsit without consideration. ''But when a person attempts to do what he had promised to do, even without any consideration, he will be liable for misfeasance.''

The distinction in duty and difference in the right of action are quite pertinently drawn in Vickery v. Lanier, 58 Ky. (1 Metc.) 133, where it was sought to hold commission merchants liable for not having insured property where there was no express or implied promise to effect the insurance. We held that if one party undertook for a consideration to insure the goods of another which were lost, and he failed or neglected to do so, a liability at once attached for any damages resulting from such failure; ''or, if such undertaking were merely gratuitous, and they proceeded to execute it, and then abandoned or neglected its performance, a like liability accrued. In the one case the claim for damage would grow out of a breach of contract, and in the other out of the misfeasance of the party. But to create such liability, however, there must have been an undertaking. The parties should have intended to enter into the agreement.'' See, also, 2 Am. Jur. 220; Restatement of the Law of Agency, American Law Institute, secs. 377, 378; 2 C. J. 433, 722; 41 C. J. 643.

When we come to look for precedents in applying the rule of responsibility, our search is not in vain.

In First National Bank & Trust Co. v. Evans, 163 A. 667, 11 N. J. Misc. 19, it was alleged in a counter-claim in a suit to recover on a mortgage note that to further secure the debt an insurance policy for $8,500 was delivered to the mortgagee. Title to the property subsequently became vested in the bank as trustee, and it was later conveyed to another. The bank advised the mortgagor that the policy would be properly changed by it to show and protect all parties. It held the policy, but failed to have it indorsed to show its

own interest as mortgagee until shortly before a fire destroyed the property, and failed altogether to have the interest of the one to whom the title had been conveyed indorsed thereon. By reason of the change in ownership, not being so indorsed, the insurance company refused to pay Evans, but did pay the bank the amount of its mortgage and took an assignment thereof. The insurance company was proceeding to foreclose the mortgage. The counterclaim was based upon the allegation that while there was no original obligation on the part of the bank to have the indorsements placed upon the policy protecting all parties in interest, and while no obligation would have arisen even though the promise had been made if the bank had done nothing, nevertheless, when it assumed to perform a gratuitous service for him, it rendered itself liable if it negligently performed that service and he suffered thereby. The court sustained Evans' right to recover on his counterclaim upon the authority of the rule as stated by Chancellor Kent in Thorne v. Deas, 4 Johns. (N. Y.) 84:

> "By the common law, a mandatory, or one who undertakes to do an act for another, without reward, is not answerable for omitting to do the act, and is only responsible when he attempts to do it, and does it amiss. In other words, he is responsible for a misfeasance, but not for a nonfeasance."

In Soule v. Union Bank, 45 Barb. (N. Y.) 111, Ellen W. Soule held title to interests of Jacob H. Mott in land belonging to the estate of John Hopper. In order that Mott might mortgage the property to the bank, she released to it all her interest and title in it. The debt seems to have been payable one year after the death of Mott's mother. As a condition or consideration for this release, the sum of $3,465.33, being the premium on life insurance for $55,000 during the probable duration of his mother's life, which was fixed as being about three years, was included in the loan but retained by the bank. A policy was taken out and the bank paid the first year's premium of $1,125, but neglected to pay any more, and the policy lapsed. Mott died during the three-year period. The bank sued, claiming the land was in lien for the full amount of its debt. The court pointed out that, had the insurance been effected by Mott and transferred to the bank as security, in case of recovery it would have been bound to credit the sum received on

the debt. The trial court had found that the bank had elected to take the risk itself. Said the Supreme Court:

"The bank under these facts must be considered as insurer, and liable to the same extent as the insurance company would have been if the policies had been continued by payment of the premium for the succeeding year. If it should be said the bank could not be insurer for want of power, the answer is that it is immaterial whether the bank is charged as insurer or as guilty of negligence in not making the insurance. The amount the plaintiffs are entitled to be credited on the mortgage would be the same."

The court held that the amount of the insurance should be credited on the mortgage bond and the lien exonerated to that extent.

See, also, Land Mortgage Investment & Agency Co. v. Gillam, 49 S. C. 345, 26 S. E. 990, 29 S. E. 203; Commonwealth Fire Ins. Co. v. Obenchain Tex. Civ. App.) 151 S. W. 611; Boyce v. Union Dime Permanent Loan Association, 218 Pa. 494, 67 A. 766, 11 Ann. Cas. 934.

The case presented by the petition at bar goes farther than stating a mere misfeasance due to negligent or partial performance of an act. The bank represented to Warrener that it had insured his property against both fire and windstorm loss for $4,800 for a period of three years; whereas it had not done so. He certainly had the right to rely upon that representation, and he pleads that he did so and was thereby deceived to his damage. There was privity of contract. The bank had authority to do what it had reserved the right to do, viz., to insure the mortgaged property not only for its own benefit, but for that of the mortgagor as well. The contract provided that the bank should hold the policy, and it does not seem that there was any duty on the part of the mortgagor to make inquiry as to whether the statements contained in the letter to him were true or not. He was naturally disarmed. But the suit is primarily pitched upon the alleged misfeasance, and the petition is perhaps lacking in some of the essential elements of an action for deceit. See Pickrell & Craig Co. v. Bollinger-Babbage Co., 204 Ky. 314, 264 S. W. 737; Bunch v. Bertram, 219 Ky. 848, 294 S. W. 805; Combs v. Poulos, 241 Ky. 617, 44 S. W. (2d) 571; Curd v. Bethell, 248

Ky. 127, 58 S. W. (2d) 261. Nevertheless the facts pleaded are of material consideration.

We are of the opinion that the petition as amended stated a cause of action, and sustaining a demurrer to it was error.

Judgment reversed.

Whole court sitting.