**In re Carrie L. WILLIAMS, Debtor.**

**Carrie L. Williams, Plaintiff,**

**v.**

**Option One Mortgage Corp., Defendant.**

**Bankruptcy No. 05–12259.**
**Adversary No. 05–1373.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 1, 2007.

Jack E. Grayer, Esq., Erie, PA, for Carrie L. Williams.

Heidi R. Spivak, Esq., Cherry Hill, NJ, for Option One Mortgage Corp.

### OPINION

WARREN W. BENTZ, Bankruptcy Judge.

#### Introduction [1]

Carrie L. Williams ("Borrower" or "Debtor") filed a voluntary Petition under

---

1. The within Opinion constitutes this Court's findings of fact and conclusions of law.

Chapter 13 of the Bankruptcy Code on July 9, 2005.

The Debtor is the owner of real property located at 15 Grant Street, North East, Pennsylvania (the "Property") which is encumbered by a Note and Mortgage dated February 19, 2000 executed by Williams in favor of Option One Mortgage Corp. ("OOMC" or "Lender"). The Property suffered damage as a result of a fire on or about September 24, 2004 (the "Fire").

Presently before the Court is a two-count Complaint filed by the Debtor. In Count I, Debtor seeks a judgment against OOMC in the amount of the actual damage the Property suffered as a result of the Fire. Count II is an objection to the claim that OOMC has filed in the Debtor's bankruptcy case. An evidentiary hearing/trial was held on November 1, 2006. At the time of trial, the parties had agreed to resolve Count II with OOMC reducing the amount of its claim by $941.15. Evidence was heard on Count I and the matter is now ripe for decision.

### Facts

#### A. The Mortgage

The Mortgage provides at ¶ 5 that "Borrower shall keep the ... Property insured against loss by fire" and "[i]f Borrower fails to maintain coverage ... Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7. Paragraph 7 provides that if the Borrower fails to perform, the Lender may, but does not have to, do and pay for whatever is necessary to protect the Property. Any amounts disbursed by the Lender under ¶ 7 become additional debt of the Borrower."

In the language of ¶ 5 which discusses the insurance to be obtained by the Borrower, the Mortgage further provides that "[i]f Borrower ... does not answer within 30 days a notice from the Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds."

#### B. The SAFECO Insurance Policy

Borrower failed to maintain insurance on the Property and at some time prior to the Fire, Lender force-placed fire insurance with SAFECO. The insurance Policy issued by SAFECO (the "Policy") named OOMC as the insured. The premium for coverage on the Property under the Policy became part of the mortgage payment of the Borrower.

The Policy provides that SAFECO will pay OOMC or the Borrower for the removal of debris and for necessary repairs to protect the Property from further damage following a peril that causes a loss. The Policy further provides coverage in the event of a fire for personal property owned by the Borrower.

Paragraph 6 of the Policy is entitled Duties After a Loss. It provides that "[i]n case of a loss to which this insurance applies, you or the 'borrower' must give us or our agent notice of the loss as soon as practicable...." "You" is defined as the named insured mortgagee, in this Policy, OOMC.

The policy provides for settlement of property losses at ¶ 7 which provides:

Loss Settlement.

Covered property losses are settled as follows:

A. Coverages 1A—Dwelling, 1B—Other Structures, and 1E Condominium Unit Items at replacement cost without deduction for depreciation subject to the following:

(1) We will pay the full cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

(a) the "limit of liability" under this policy applying to the building;

(b) the replacement cost of that part of the damaged building for like kind and quality construction and use on the same premises as determined shortly following the loss; or

(c) the amount actually and necessarily spent to repair or replace the damaged building.

(2) When the cost to repair or replace the damage is more than $2,500, we will pay the difference between the "actual cash value" and replacement cost only after the damaged or destroyed property has actually been repaired or replaced.

(3) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an "actual cash value" basis. A claim can be made for any additional liability on a replacement cost basis after actual repair or replacement is completed if done so within 180 days of the date of loss.

(4) Carpeting, domestic appliances, awnings and outdoor equipment, whether or not attached to a dwelling or other structure, at the "actual cash value" at the time of loss but not exceeding the amount necessary to repair or replace.

B. Coverages 1F–Personal Property and 2A–Commercial Buildings at the lesser of:

(1) the "actual cash value" of the property at the time of loss;

(2) amount necessary to repair or replace the property; or

(3) "limit of liability" under this policy applying to the property insured.

At ¶ 10, the Policy sets forth a procedure for Appraisal if SAFECO, the Lender and/or the Borrower fail to agree on the amount of loss. It provides:

10. Appraisal.

If the claimant and we fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select an umpire within 15 days. The claimant or we can ask a judge of a court of record in the state where the "insured location" exists to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. We shall pay 50% of the other expenses of the appraisal and 50% of the compensation of the umpire. The remainder shall be paid by the party with whom we could not reach agreement. If both you and the "borrower" did not agree both you and the "borrower" shall pay the remainder equally.

Finally, the Policy provides how a loss payment will be made. Losses to the Property are adjusted with the Lender and losses to personal property are adjusted with the Borrower:

15. Loss Payment.

A. All losses except losses under Coverage 1F—Personal Property:

We will adjust all losses with you. We will pay you but in no event more than the amount of your interest in the "insured location". Amounts payable in excess of your interest will be paid to

the "borrower" unless some other person is named by the "borrower" to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

(1) reach agreement with you;

(2) there is an entry of final judgment; or

(3) there is a filing of an appraisal award with us.

B. Losses under Coverage 1F—Personal Property:

We will adjust all losses with the "borrower". We will pay the "borrower" unless some other person is named by the "borrower" to receive payment. Loss will be payable 30 days after we receive the "borrower's" proof of loss and:

(1) reach agreement with the "borrower";

(2) there is an entry of final judgment; or

(3) there is a filing of an appraisal award with us.

### C. The Claim

On or about September 24, 2004, the Property was damaged by fire. Borrower immediately notified OOMC of the loss. OOMC provided Borrower with contact information for SAFECO to enable Borrower to file a claim for the Fire loss. Borrower promptly contacted SAFECO to initiate the claim.

SAFECO engaged Crawford and Company ("Crawford") to inspect the damage and prepare an estimate of the cost to repair the Property. A representative of Crawford inspected the Property on October 14, 2004. A repair estimate was completed on October 25, 2004 which estimates the amount of the loss to the Property as:

| | |
|---|---|
| Actual Cash Value | $16,346.17 |
| Less Deductible | 2,500.00 |
| Net Claim | $15,846.17 |
| Total Recoverable Depreciation | 1,315.57 |
| Net Claim if Depreciation Recovered | $17,161.74 |

Borrower was aware of the amount of the Crawford estimate. On or about November 22, 2004, SAFECO issued a check to OOMC in the amount of $15,846.17 without notice to or the consent of the Borrower. OOMC placed the funds in a restricted escrow account.

Debtor incurred a fee on November 11, 2004 for trash removal from the cleanup after the Fire and incurred $500 per month in hotel charges for four months or a total of $2,000 while unable to live in the Property. Debtor calculates a loss of personalty in the Fire in the amount of $1,490.

On December 3, 2004, OOMC mailed a letter to the Borrower regarding the insurance proceeds. It was a standard form letter and was inaccurate. The letter states in part:

Thank you for contacting our office regarding the insurance claim check you have received. Since the claim check exceeds $10,000.00, we have outlined the following guidelines in order to process your claim. In the event your total claim exceeds 30,000.00, then these procedures may change.

1) Have the check endorsed by ALL listed parties and forward the check to:

Option One Mortgage Corporation

Attention: Loss Draft Department

P.O. Box 53930

Irvine, CA 92619–3930

2) Sign and return the enclosed Insurance Claim Affidavit form.

3) Submit a copy of the Loss of Damage worksheet report, prepared by your insurance company.

4) Submit a copy of the itemized construction and contract bid, including

their draw schedule and copies of permits and/or building plans (if applicable.) 5) Have your contractor sign a Conditional Waiver of Lien. Please use the enclosed form or the form provided by your contractor. HZ 164 020 Z24 Upon receipt of all documentation referenced above, we will release the first of three draws within 48 hours to begin work.

The letter refers to an insurance claim check received by the Borrower. The check was tendered to OOMC by SAFECO. It was never in the Borrower's possession.

Debtor proceeded to contact a contractor in an effort to comply with the requirements of the December 3, 2004 letter. On December 27, 2004, the contractor prepared a letter addressed to Option One and a proposal to repair the Property for $44,780. The contractor faxed the estimate to a number believed to be that of OOMC or SAFECO. OOMC denies receipt of the correspondence.

Communications broke down. OOMC continues to hold the SAFECO insurance proceeds in escrow. The monies held are not sufficient to complete the repair to the Property. The cost to repair the Property is $44,780. We credit the testimony of Debtor's contractor. Rather than do an estimate based on square footage as SAFECO's adjuster did, Debtor's contractor described a room by room estimate of what repairs were necessary to restore the Property to pre-Fire condition.

Debtor returned to the Property in March, 2005. Debtor is able to utilize 3 or 4 of the 8 rooms in the Property. It has no operating furnace. Heat is generated with a fireplace and electric space heaters.

The bankruptcy case followed.

### Discussion

The mortgage placed no duty or obligation on OOMC to insure the Property. The obligation to insure the Property rested with the Borrower. If the Borrower failed to provide the required insurance, OOMC had the option to obtain insurance and add the cost of such insurance to the Borrower's debt.

■ "[W]hen the mortgagee is not under a duty to effect insurance, but merely has an option to do so, an election to exercise such option obligates it to look after the interests of the mortgagor as well as its own." *In re Barbel,* 191 Fed.Appx. 101, 104 (3d Cir.2006) *quoting* 4 *Couch on Ins.* § 65:7 (3d ed.). *See also Warrener v. Federal Land Bank of Louisville,* 266 Ky. 668, 99 S.W.2d 817 (Ky.1936).

When OOMC elected to force-place insurance with SAFECO, the insurance was not for its sole benefit, but as made clear by the Policy provisions, was also intended to protect the Borrower.

■ The language of the SAFECO policy contemplates the situation we have here where SAFECO, OOMC and the Borrower fail to agree on the amount of the loss. In this case, OOMC accepted a check in payment of the loss from SAFECO without consulting the Borrower regarding the sufficiency of the amount, in default of its duty to look after the interests of the mortgagee as well as its own. The amount OOMC chose to accept does not represent the reasonable value of the loss sustained.

We credit the Debtor's testimony of her efforts to resolve the issues and to get the repairs completed to the Property. Following the Fire, she immediately contacted OOMC. OOMC directed the Debtor to SAFECO. Debtor immediately contacted SAFECO.

After OOMC received the payment from SAFECO, OOMC sent the Debtor the letter of December 3, 2004. At best, the letter must have confused the Debtor. It

referred to the insurance claim check that the Debtor had received, when in fact Debtor receiving nothing. Debtor was living in a motel at the time and had every incentive to get the Property repaired. Following receipt of the December 3 letter, she contacted a contractor who then inspected the Property and, by December 27, 2004, prepared a proposal and faxed it. While OOMC indicates that it never received the proposal, we find that either SAFECO or OOMC had knowledge of the proposal and credit Debtor's testimony that she was directed back and forth between OOMC and SAFECO several times.

OOMC is liable to account to the Borrower for the difference between the amount accepted and the actual amount of loss.

### Conclusion

The Fire caused \$44,780 in damage to the Property. OOMC had an obligation to look after the Debtor's interests as well as its own in resolving the Fire loss claim with SAFECO. OOMC failed to meet that obligation and is liable to the Debtor for the cost of restoration of the Property.[2]

An appropriate Order will be entered.

### ORDER

This *1st* day of February, 2007, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED that judgment is entered in favor of Carrie L. Williams and against Option One Mortgage Corp. in the amount of \$44,780.

---

2. SAFECO was not made a party to this action. We make no determination whether SAFECO has fulfilled its obligation under the Policy between it and OOMC. Likewise, we make no determination whether SAFECO remains liable to the Debtor for loss of personal property.