*NOT RECOMMENDED FOR FULL-TEXT PUBLICATION*
File Name: 05a0714n.06
Filed: August 16, 2005

No. 04-5942

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MINING MACHINERY, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT COURT |
| | ) | FOR THE EASTERN DISTRICT |
| CLARENCE COPLEY, Administrator | ) | OF KENTUCKY |
| of the Estate of Clarence Matthew Copley, | ) | |
| Deceased; TONYA CRABTREE, | ) | |
| Guardian and Next Friend of | ) | |
| Matthew Elam Copley, | ) | |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

Before: MOORE and COLE, Circuit Judges, and WISEMAN,[*] Senior District Judge.

**THOMAS A. WISEMAN, JR., Senior District Judge.** Defendants-Appellants Clarence

Copley, as Administrator of the Estate of Matthew Copley, deceased, and Tonya Crabtree, as

Guardian and next friend of Matthew Elam Copley (collectively, "Appellants"), appeal the district

court's order granting summary judgment to Plaintiff-Appellee Mining Machinery, Inc. ("MMI")

in the underlying declaratory judgment action. Appellants contend the district court erred in finding

that MMI is immune from tort liability arising from the death of Clarence Matthew Copley by way

of the exclusive-remedy provisions of the Kentucky Workers' Compensation Act, Ky. Rev. Stat.

---

[*]The Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle
District of Tennessee, sitting by designation.

Chapter 342. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Appalachian Fuels, LLC ("Appalachian")[1] owns and operates a surface coal mine in Martin County, Kentucky. At the time of the accident in question, MMI maintained its offices in the same premises as Appalachian and was in the business of leasing and providing maintenance services for various kinds of equipment used by Appalachian in its mining operations. More specifically, during the relevant time frame, Appalachian and MMI were parties to an "Equipment Lease" pursuant to which Appalachian leased from MMI the machinery used in its mining operations. Under the Equipment Lease, Appalachian was responsible for the maintenance of the equipment it leased. (See Lease ¶ 8, Joint Appendix ("JA") at 290.) However, the parties had also executed a "Service Agreement" pursuant to which MMI rendered maintenance services to Appalachian for the same equipment. (Service Agreement, JA at 241-49.) According to Jeff Suttle, MMI's vice president of sales, the work performed by MMI under the Service Agreement included daily routine maintenance as well as all major "component exchange" and repair work. As Suttle acknowledged in his deposition, the Service Agreement did not contain any language expressly prohibiting Appalachian from hiring a different contractor to perform maintenance work on the equipment it leased from MMI, but there is no evidence in the record that Appalachian ever exercised that option, if indeed it was an option.

The Service Agreement specifically contemplated that MMI could engage subcontractors to assist it. At the same time, if MMI did engage subcontractors, it alone remained "responsible for

---

[1]Appalachian was a plaintiff in the underlying declaratory judgment action but is not a party to this appeal.

the due performance of all services or other obligations" under the Service Agreement. (See Service Agreement § II, JA at 241.)

The parties understood that if MMI billed Appalachian directly for the services of subcontractors, MMI would, under the Service Agreement, add a ten-percent surcharge onto the cost, unless the parties agreed otherwise prior to the engagement of any subcontractors. (Service Agreement §§ II and III, JA at 241–42.) Under the parties' common practice, however, MMI would engage subcontractors but allow the subcontractors to submit their invoices directly to Appalachian rather than going through MMI, in order to permit Appalachian to avoid the 10% surcharge. MMI's technical support specialist, Ben Sargent, testified that when a subcontractor submitted a bill under these circumstances, Sargent was personally required to "sign off on it" (12/4/03 Deposition of Grover Benjamin Sargent ("Sargent Dep.") at 11–12, JA at 347–48), to show that, as he said, "they [did] the work for me." (Sargent Dep. at 13:14–17, JA at 349.)

During the week prior to December 28, 2002, Appalachian and MMI discussed repairing a Caterpillar 777 rock truck, specifically lining the truck bed with new steel, during the week around Christmas when mining operations would be shut down. This job was consistent with the normal maintenance work performed by MMI pursuant to the Service Agreement. MMI, however, had only one welder available for the job during that time frame. Realizing that one welder by himself could not complete the job by December 30, Ben Sargent received approval from Brent Tackett at Appalachian to get additional help. Sargent then contacted Mark Bryant at T&M Welding, Inc. ("T&M"), a West Virginia corporation with which MMI had previously worked on similar jobs, to see if T&M had welders available to help during the week that Appalachian's mining operations would be shut down. Bryant said he could provide a couple of welders to help out so, on the

3

morning of December 28, 2002, Clarence Matthew Copley and Henry Hundley, both T&M welders, traveled from the T&M shop in Naugatuck, West Virginia to Appalachian's mine site in Martin County, Kentucky.

Copley and Hundley were assisted that day by MMI's one available welder, Jerry Runyon. Ben Sargent oversaw the work. The first order of business was to cut the piece of steel to fit the area needing to be relined. Runyon then lifted the steel plate onto the truck bed using a hydraulic excavator. Copley and Hundley guided the plate into position. Copley was positioned between the suspended bucket of the excavator and the inside wall of the truck bed. After lowering and releasing the plate, Runyon left the bucket of the excavator suspended over the front center of the truck bed. Sargent began calling out instructions to him. Runyon was having difficulty hearing Sargent's instructions due to the noise of the excavators and other welding equipment. To hear better, Runyon rose from the seat and leaned out of the door of the excavator. Sargent directed him to use the bucket of the excavator to press the steel plate against the bed of the truck so that Copley and Hundley could tack-weld it in place. As Runyon returned to the operator's seat, he inadvertently bumped the left joystick control, causing the boom and bucket of the excavator to swing to the right, pinning Copley between the bucket and the inside wall of the truck bed. Copley was fatally injured and was pronounced dead at the scene after paramedics arrived.

T&M did not actually issue an invoice or seek payment for any work done on the job at which Copley was killed. In the past, however, when Sargent had contacted T&M to assist with a job, T&M would send the invoice directly to Appalachian or to whomever Sargent directed. It is undisputed that if T&M had submitted an invoice, it would have submitted it directly to Appalachian.

4

MMI and Appalachian filed the underlying declaratory judgment action after learning that Appellants intended to file suit against them to recover damages related to Copley's death. In their Complaint, MMI and Appalachian alleged that they had at all relevant times "secured payment" of workers' compensation benefits as required by Ky Rev. Stat., Chapter 342, and as employers or contractors were immune from tort liability pursuant to the provisions of Ky. Rev. Stat. § 342.690. After both MMI and Appalachian filed motions for summary judgment, Appellants agreed to waive any claims against Appalachian and Appalachian was dismissed from this action with prejudice. The district court entered summary judgment in favor of MMI, and this appeal followed.

Because the other elements pertaining to MMI's entitlement to immunity are apparently undisputed, the sole question before this Court on appeal is whether there was a contractor-subcontractor relationship between MMI and T&M such that MMI will be protected by the exclusive-remedy provisions in Kentucky's workers' compensation statute. Appellants argue that the district court erred in issuing summary judgment because there are genuine issues of material fact.

## II. ANALYSIS

### A. Standard of Review

This Court reviews a district court's decision to grant summary judgment *de novo*. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict

for the nonmoving party. Thus, the operative question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party cannot rely upon the assertions in the pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact. *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2002). The nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact. *Id.*

Obviously, to the extent there are any disputed issues of fact, this Court must view the evidence and any inferences reasonably drawn from it in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Whether MMI Is Entitled to Immunity Under Kentucky's Workers' Compensation Statute**

In this diversity case, the substantive law of the state of Kentucky applies. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). Under Kentucky's Workers' Compensation statute, an "employer who secures payment of [workers'] compensation" benefits

under the statute for the injury or death of an employee is immune from tort liability arising from such injury or death. Ky. Rev. Stat. § 342.690(1). The term "employer" is defined by the same provision to include a "contractor" as set forth in Ky. Rev. Stat. § 342.610(2), which states:

> A person who contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.

Ky. Rev. Stat. § 342.610(2); *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky. 1986).

The statute does not define further how to determine whether a contractor-subcontractor relationship has been formed, but under Kentucky law, contractors and subcontractors are in a principal-agent relationship. *See, e.g.*, *Johnson v. Bechtel Assocs. Prof'l Corp.*, 717 F.2d 574, 580 (D.C. Cir. 1983), *rev'd on other grounds*, 467 U.S. 925 (1984). When the facts are undisputed, the question of whether an agency relationship has been formed is a question of law for the court. *CSX Transp., Inc. v. First Nat. Bank*, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999). "Under Kentucky law, the right to control is considered the most critical element in determining whether an agency relationship exists." *Id.* at 566–67 (quoting *Grant v. Bill Walker Pontiac-GMC, Inc.*, 523 F.2d 1301, 1305 (6th Cir.1975)).

In the case before us, there is no dispute that the work being performed by T&M was "of a kind which is a regular or recurrent part of the work" of MMI; the question is whether MMI and T&M entered into a contract as contractor-subcontractor for the performance of that work, or whether T&M entered into a contractual relationship with Appalachian instead. Appellants concede that if there is a contractual relationship between T&M and MMI, then MMI is protected by the statute.

The undisputed facts presented by MMI demonstrate that MMI, not Appalachian, controlled the nature and extent of T&M's participation in the repair work being done at the time of Copley's death. Ben Sargent with MMI contacted T&M about providing assistance of his own initiative, though he was authorized by Appalachian to get help on the project; MMI determined the scope of T&M's involvement in the project; MMI oversaw all of T&M's work[2]; and Appalachian never had any direct contact with T&M and in fact was not actually aware that MMI had engaged T&M until after the accident occurred. Further, the repair work being performed at the time Mr. Copley died was work for which MMI had assumed complete responsibility. (*See* Service Agreement, JA at 241 (providing that MMI "shall at all times remain responsible for the due performance of all services or other obligations under this Agreement").)

Appellants maintain, however, that T&M was actually Appalachian's subcontractor and that MMI was merely a third party to the relationship between T&M and Appalachian. In support of their argument, Appellants contend that, while the Service Agreement between Appalachian and MMI clearly contemplates that MMI could engage subcontractors, MMI did not abide by the contract provisions pertaining to such engagements. For instance, while the Service Agreement requires any subcontractor to "agree[] to be bound by all applicable obligations of [MMI]," T&M did not expressly agree to any such terms. Further, although the Service Agreement provides that MMI would bill Appalachian directly for services provided by subcontractors at cost plus a ten-percent mark-up, T&M was directed to submit its invoice to Appalachian for payment, not to MMI,

_____

[2]Appellants argue that Sargent testified he was not the "foreman" at the job. The question of whether he considered himself to be foreman (which is a term of art in the business and requires certification) is immaterial given that he was unquestionably the person in charge during the repair work.

and at no mark-up. Because the Agreement states it may only be modified in writing and no such writing was executed, Appellants contend that MMI's failure to follow the strict terms of the contract in engaging T&M gives rise at the very least to a reasonable inference that MMI was only functioning as a go-between, and that T&M actually contracted directly with Appalachian rather than subcontracting with MMI. Appellants claim this inference is further supported by the fact that MMI admitted that Appalachian had the ability to contract directly with other parties for the repair and maintenance of the equipment leased from MMI. Appellants argue that the district court erred in not "indulging" that inference. (Appellants' Br. at 18.)

We find that the "facts" to which Appellants point do not create any genuine issues of material fact sufficient to avoid summary judgment on the issue of whether MMI and T&M were in a contractor-subcontractor relationship, given the clear evidence of the degree of control exercised by MMI over T&M's work on the project during which Copley was killed. More specifically, whether MMI did or did not abide by the Service Agreement's requirement pertaining to the retention of subcontractors has no bearing on the question of whether MMI subcontracted with T&M. Instead, a failure by MMI to abide by the terms of the Service Agreement would simply provide Appalachian a potential basis for a breach-of-contract claim against MMI.

Likewise, while the question of who pays the invoices generally would be an important factor to consider in determining the degree of control exercised by one party over the other, the fact that T&M expected to submit its invoice directly to Appalachian in this instance does not create a reasonable inference that a contract was created between Appalachian and T&M, because (1) contrary to Appellants' contention, the Service Agreement specifically contemplates that the parties may agree to waive the ten-percent surcharge permitted by the Agreement (see Service Agreement

9

§ II, JA at 241); and (2) representatives from both MMI and Appalachian testified that they had a long-standing practice of waiving the mark-up. Moreover, it is clear that T&M sent its invoices to Appalachian because that is what it was directed to do by MMI. Finally, although MMI testified that Appalachian had the ability under the Service Agreement to hire other parties directly to perform repairs, there is no indication that it ever did so. To the contrary, the evidence of the parties' past dealings demonstrates that up until the time of Copley's death, Appalachian had relied exclusively upon MMI to maintain and repair its mining equipment. Under the circumstances, the sole fact that Appalachian would have paid T&M's bill if an invoice had been submitted is of relatively little significance. Whatever significance it might have is substantially outweighed by the evidence showing that MMI controlled virtually every other aspect of T&M's participation in the project.

Accordingly, we find that the district court did not err in concluding as a matter of law based upon the undisputed facts that a contractor-subcontractor relationship had been formed between MMI and T&M and that MMI was therefore protected from tort liability by virtue of Kentucky's workers' compensation statute.

### III. CONCLUSION

For the reasons set forth above, summary judgment in favor of MMI is **AFFIRMED**.