CSX TRANSPORTATION,
INC., Appellant,

v.

FIRST NATIONAL BANK OF
GRAYSON, Appellee.

No. 1998–CA–000694–MR.

Court of Appeals of Kentucky.

Nov. 19, 1999.

As Modified Feb. 11, 2000.

Janet Smith Holbrook, Ashland, KY, for Appellant.

James H. Moore, III, Ashland, KY, for Appellee.

BEFORE: GUDGEL, Chief Judge; BUCKINGHAM, and KNOX, Judges.

## OPINION

BUCKINGHAM, Judge.

CSX Transportation, Inc., ("CSXT") appeals from a judgment of the Boyd Circuit Court in favor of First National Bank of Grayson ("FNB") in the principal sum of $192,562.92, which includes an amount of $52,166.35 for attorney fees. The issues in the case involve whether Custom Transportation, Inc., ("CTI") was CSXT's agent for purposes of receiving a notice of assignment of accounts receivable and whether the award of attorney fees was proper. Agreeing with CSXT on the attorney fees issue but disagreeing on the

agency issue, we affirm in part and reverse in part.

CSXT and Bailey Trucking, Inc., contracted with each other for a number of years for Bailey Trucking to transport items for CSXT. In 1995, CSXT decided to obtain bids from various companies and to have the successful bidder manage CSXT's motor carrier operations. CTI was the successful bidder, and CSXT entered into a contract with CTI in January 1996 whereby CTI would manage CSXT's trucking operations. That contract contained a provision defining CTI's status in this manner:

> *Independent Contractor Status.* The only relationship created by this Agreement shall be that of CTI being an independent contractor to CSXT. No agent, employee or servant of CTI shall be or shall be deemed to be the employee, agent or servant of CSXT. None of the benefits provided by CSXT to its employees, shall be available from CSXT to the employees, agents or servants of CTI.

The contract also specified how CTI was to manage the trucking operations, directed that CSXT was to provide CTI with office space at CSXT's facilities in Jacksonville, Florida, and stated that CSXT retained sole responsibility for paying all carriers directly. CTI in turn entered into a motor carriage contract with Bailey Trucking. This contract contained a provision which noted that CSXT would pay Bailey Trucking within thirty days of its receipt of a complete and accurate billing.

Before the CSXT/CTI contract, Bailey Trucking had a banking arrangement with National City Bank ("NCB") whereby Bailey Trucking was granted a revolving line of credit loan with a maximum credit limit of $175,000. This loan was secured by an assignment of Bailey Trucking's accounts receivable from CSXT. The loan agreement had a maturity date of December 31, 1995.

During the latter part of 1995, NCB became dissatisfied with the performance of Bailey Trucking's loan. NCB made a decision not to renew the note based on the lack of payment history, concern about Bailey Trucking's business, and the fact that the haulage contract with CSXT was not yet in place for 1996.

In January 1996, FNB loaned money to members of the Bailey family, secured by an interest in the accounts receivable of Bailey Trucking. A notice of assignment dated February 16, 1996, giving notice that Bailey Trucking had assigned amounts due under the CTI/Bailey contract to FNB, was sent by FNB to CTI. The notice was received by Marshall Beene, the individual at CTI who administered and approved the contracts and invoices for services pursuant to haulage contracts with carriers such as Bailey Trucking. FNB did not send notice of its security interest in Bailey Trucking's accounts receivable to CSXT. At the time Bailey Trucking pledged its accounts receivables to secure the FNB loans, amounts were still owed to NCB. The two banks understood, however, that the security interest of NCB in the accounts receivable owed by CSXT to Bailey Trucking would take precedence over FNB's security interest.

On February 19, 1996, without the knowledge of NCB or FNB, one of the owner/operators of Bailey Trucking faxed a letter to CSXT directing that all payments to Bailey Trucking be made to a bank account in the name of Flossie Bailey at a bank other than NCB or FNB. When the banks became aware that CSXT was making payments to the Flossie Bailey account rather than in accordance with the assignments, the banks again notified Beene of the assignments and requested an explanation. Although CSXT eventually began escrowing payments to Bailey Trucking, it paid more than $421,000 directly to Bailey Trucking after it received notice from NCB and FNB in the letters sent by the banks.

NCB subsequently filed a complaint in the Boyd Circuit Court against Bailey

Trucking, its owners, and CSXT. As to CSXT, NCB's complaint alleged that CSXT was liable to NCB as a result of its failure to pay money owed to Bailey Trucking to NCB pursuant to the assignment of accounts receivable. FNB's intervening complaint made a similar allegation against CSXT. Pursuant to CSXT's motion and an order of the court, money held by CSXT in an escrow account was paid to NCB and to FNB. The amount paid to NCB was sufficient to pay Bailey Trucking's indebtedness to NCB. The remaining amount which was paid to FNB was not sufficient to cover Bailey Trucking's indebtedness at that bank.

At the trial, FNB sought to recover from CSXT the remaining balance owed on Bailey Trucking's indebtedness at that bank. CSXT denied liability on the ground that it did not receive notice of the assignment of accounts receivable. At the conclusion of all evidence, the trial court granted FNB's motion for a directed verdict against CSXT, holding that Marshall Beene was an agent of CTI, CTI was an agent of CSXT, and notice given to Beene was notice to CSXT of the assignment of accounts receivable. Judgment was then entered in favor of FNB for $192,562.92, which includes $52,166.35 for attorney fees. This appeal by CSXT followed.

Kentucky Revised Statute (KRS) 355.9–318(3), the applicable statutory provision in this case, provides in relevant part that "[t]he account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee." It follows, therefore, that once the account debtor (CSXT) receives notification that the accounts receivable have been assigned to the assignee (NCB and FNB), then the account debtor is obligated to pay the assignee rather than the assignor (Bailey Trucking). In the case sub judice, FNB sent notification to CTI that it had been assigned the accounts receivable of Bailey Trucking and

that CSXT, as the account debtor, should make future payments to FNB. The main issue in this case is whether notification to CTI was sufficient to constitute notice to CSXT of the assignment of the accounts receivable so as to obligate CSXT to pay the account debt directly to FNB. The resolution of this issue lies with the determination of whether CTI was an agent of CSXT.

The trial court granted FNB's motion for a directed verdict and determined that CTI was CSXT's agent. "Agency is a legal conclusion to be reached only after analyzing the relevant facts. . . ." *Thomas v. Hodge*, 897 F.Supp. 980, 982 (W.D.Ky.1995). "Where the facts are in dispute and the evidence is contradictory or conflicting, the question of agency, like other questions of fact, is to be determined by a jury. However, where the facts are undisputed, the question becomes one of law for the court." *Wolford v. Scott Nickels Bus Co.*, Ky., 257 S.W.2d 594, 595 (1953). As the facts surrounding the relationship between CSXT and CTI are undisputed, the trial court properly made the determination of the issue of agency rather than to submit the question to the jury.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *McAlister v. Whitford*, Ky., 365 S.W.2d 317, 319 (1962). CSXT argues that CTI was not its agent because, according to its contract with CTI, CTI was an independent contractor of CSXT. However, "in determining whether one is an agent or servant or an independent contractor, substance prevails over form, and . . . the main dispositive criterion is whether it is understood that the alleged principal or master has the right to control the details of the work." *United Engineers and Constructors, Inc. v. Branham*, Ky., 550 S.W.2d 540, 543 (1977). "Under Kentucky

law, the right to control is considered the most critical element in determining whether an agency relationship exists." *Grant v. Bill Walker Pontiac–GMC, Inc.,* 523 F.2d 1301, 1305 (6ᵗʰ Cir.1975).

We conclude it was clear from the evidence that CSXT controlled CTI. Although CSXT purported in its contract with CTI to decline control over the manner in which CTI performed services under the contract, the record indicates CSXT's extensive control. CSXT trained Beene for the exclusive purpose of taking over CTI so that CTI could manage CSXT's trucking operations. Furthermore, CSXT controlled the contract process between CTI and the carriers. CSXT insisted on certain language being placed into the motor carrier contract between CTI and Bailey Trucking. Another example which demonstrates CSXT's supervision and control over CTI was the series of three letters sent by CTI to Bailey Trucking at the direction of CSXT and its legal department which drastically altered Bailey Trucking's status with CSXT/CTI. Throughout the entire process, CSXT controlled CTI's ability to contract, its operational conduct, and the details of whether or not Bailey Trucking would provide services through CTI. CTI's attempt to mask the agency relationship with an independent contractor label fails as a result of the ongoing control exerted by CSXT over CTI in the management of CSXT's trucking operations.

■ Having determined that an agency relationship exists, we must determine the nature of the agency and whether Beene's receiving notice of assignment of accounts receivable was within the scope of the agency. This depends upon the extent of the agent's authority. The parties agree that there was no actual authority pursuant to an express agency. That, however, does not preclude a finding of actual authority under an implied agency if such can be deduced from the surrounding facts of the case.

CSXT specifically sent CTI out to locate and contract with carriers such as Bailey Trucking. CSXT knew that CTI would contract with carriers and would include terms in the motor carriage contracts which purported to bind CSXT. Beene testified that CSXT had stipulations that it wanted included in CTI's motor carriage contracts. One of the provisions contained in CTI's contract with Bailey Trucking states that

16. *NOTICE.* All notices shall be in writing and extended first class U.S. mail or by overnight express carrier. Until otherwise advised, all notices shall be sent to the parties at the following address:

To Carrier:                     To CTI:

Ms. Jane West                  Attn: Marshall Beene
E.G. Bailey Trucking,          Customized Transportation, Inc.
Inc., H.C. 60, Box 220         10407 Centurion Parkway, No
Greenup, KY 41144             Jacksonville, FL 32256

Given CTI's authority to contract on behalf of CSXT and CSXT's control of the language utilized in the contract, it is obvious that CTI was an agent for the purposes of binding CSXT in the contract with Bailey Trucking. Moreover, the language of CTI's contract with Bailey Trucking emphasizes this construction. Specifically, CTI's contract with Bailey Trucking states that CTI undertook the contract "on behalf of itself and its affiliated companies, consisting of CSX Corporation and its subsidiary companies, including CSX Transportation" and that "CTI is acting on behalf of its affiliate CSXT." Beene confirmed this at trial by testifying that CTI's contract with Bailey Trucking often stated "CTI/CSXT" "so [the carrier] would understand who the contract was with."

The foregoing establishes that CTI was contracting on behalf of itself and CSXT, intending to bind and benefit both CTI and CSXT in an agreement with Bailey Truck-

ing. Because CSXT held CTI out and intended for CTI to act as manager of CSXT's trucking operations, to be authorized to manage the day-to-day operations, to contract with carriers, and to accept and filter communications from carriers with regard to accounts receivable, CTI was clearly a general agent for CSXT. As general agent, CTI had the authority to accept a notice of assignment concerning CSXT's accounts receivable, and FNB's notice to Beene at CTI constituted notice to CSXT which triggered CSXT's duty to remit payments to FNB.

An agency relationship between CSXT and CTI based on the theory of apparent authority is likewise evident. "An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Middleton v. Frances*, 257 Ky. 42, 44, 77 S.W.2d 425 (1934). CTI had been given general authority to act and manage a trucking operation on behalf of CSXT without any apparent limitation. Beene testified that he had met with Willis Kelly from FNB with regard to Bailey Trucking. Beene admitted that he neither told Kelly nor notified anyone at FNB that he was not the proper person to contact concerning CSXT's accounts with Bailey Trucking. In fact, Beene testified that he sent a note to FNB which purported to account for the amounts which were due and owing to Bailey Trucking and listed the approximate dates when those payments would be made. Further, Beene's note to FNB regarding Bailey Trucking's accounts receivable specifically stated that if FNB had any questions, it should call him. Because FNB had contacted Beene, who engaged in the discussion of Bailey Trucking's accounts receivable without any disclaimer, FNB was justified in relying on Beene's apparent authority to handle letters and notices regarding those accounts.

CSXT attempts to find a safe harbor by arguing that apparent authority may be created only by the representation or conduct of the principal, not of the agent. *Enzweiler v. People's Deposit Bank of Burlington*, Ky.App., 742 S.W.2d 569, 570 (1987). CSXT argues that it was never in contact with FNB and, therefore, could never have given FNB any indication that CTI had authority to act on CSXT's behalf. Unlike the facts in *Enzweiler*, the undisputed facts herein show that CSXT made representations through its words and conduct that CTI, and therefore, Beene, was its agent.

Furthermore, CSXT attempts to minimize CTI's authority regarding CSXT's indebtedness by arguing that only CSXT could make the payments to Bailey Trucking and other carriers. In short, CSXT tries to limit the ability of Beene to receive notice by citing his inability to have actually directed payment of the funds. While Beene and CTI did not have the ability to pay the accounts, they received, reviewed, approved, and forwarded all statements and invoices from carriers to CSXT. CSXT clearly allowed Beene to act on its behalf with regard to bills from its carriers and to appear to be the contact regarding these accounts. CTI, and therefore Beene, was an agent of CSXT for all purposes regarding CSXT's accounts receivable.

Finally, CSXT is prevented from denying CTI's agency relationship through estoppel. "A party may be estopped to insist upon a claim or take a position which is inconsistent with an admission or denial of a fact which he has previously made or with a course of conduct in reliance upon which the other party changed his position to his detriment or prejudice." *Hicks v. Combs*, 311 Ky. 149, 152, 223 S.W.2d 379 (1949). CSXT allowed CTI and Beene to hold themselves out as having authority to act on CSXT's behalf. In short, we conclude that the trial court did not err when it granted a directed verdict in favor of FNB on the ground that

CTI was an agent of CSXT and that notice of the assignment of Bailey Trucking's accounts receivable given to Beene constituted notice to CSXT.

CSXT also contends that the trial court erred in granting FNB's recovery of attorney fees as damages from CSXT. "As a general rule, in the absence of contractual or statutory liability, attorney's fees are not recoverable as an item of damages." *Lyon v. Whitsell,* Ky., 245 S.W.2d 926 (1951). FNB states that the notes given to it by Bailey Trucking specifically provide for reasonable attorney fees in the collection of FNB's collateral. KRS 411.195 states that

[a]ny provisions in a writing which create a debt, or create a lien on real property, requiring the debtor, obligor, lienor or mortgagor to pay reasonable attorney fees incurred by the creditor, obligee or lienholder in the event of default, shall be enforceable, provided, however, such fees shall only be allowed to the extent actually paid or agreed to be paid, and shall not be allowed to a salaried employee of such creditor, obligor or lienholder.

This statute, however, applies only to the parties to the writing. *Farmers Bank & Trust Co. v. Brazell,* Ky.App., 902 S.W.2d 830, 833 (1995).

FNB characterizes this situation as a wrongful payment of collateral and contends that its attorney fees were part of the recovery of the collateral and were not separate damages. FNB cites no authority to support its position, and this court has held to the contrary. *See Ranier v. Gilford,* Ky.App., 688 S.W.2d 753, 756 (1985). As there was neither contractual nor statutory authority for an award of attorney fees, we conclude that the trial court erred in this regard.

The judgment of the Boyd Circuit Court is affirmed in part and is reversed in part due to the attorney fees of FNB not being recoverable.

ALL CONCUR.