**James BROOKS; Robin Brooks, Appellants,**

v.

**GRAMS, INC., d/b/a Gram's Grocery, Appellee.**

**No. 2007–CA–001087–MR.**

Court of Appeals of Kentucky.

Aug. 8, 2008.

Discretionary Review Denied by Supreme Court Aug. 19, 2009.

---

J. Hadden Dean, Danville, KY, for appellants.

Angela L. Greene, Florence, KY, for appellee.

Before CAPERTON, KELLER, and WINE, Judges.

## OPINION

WINE, Judge.

James and Robin Brooks ("the Brookses") filed this personal injury/negligence action on August 30, 2004, for damages arising from an automobile accident involving Ferand Dillingham ("Ferand"). In their complaint, the Brookses named Fe-

rand's estate; Edith and Farland Dillingham (the owners of the vehicle which Ferand was driving); Grams Inc., d/b/a Gram's Grocery ("Grams"); and Ferand's automobile insurance carrier, State Auto Property and Casualty Insurance Company. Following an extended period of discovery, Grams filed a motion for summary judgment, arguing that it could not be liable for Ferand's negligence because it had no agency relationship with him. After considering the briefs and arguments of counsel, the trial court granted the motion and dismissed the Brookses' claims against Grams.[1] This appeal followed. Finding no error, we affirm.

The following facts are not in dispute. The Brookses' claims arise from an early morning automobile accident on September 1, 2003, on U.S. Highway 150 in Stanford, Lincoln County, Kentucky. At approximately 5:40 a.m., Ferand's east-bound 1998 Eagle Talon collided with the Brookses' west-bound 1994 Pontiac at a speed of approximately 100 to 110 miles per hour. Ferand died at the scene. Robin Brooks was hospitalized while her husband, James Brooks, was treated and released.

Prior to the accident, at approximately 5:00 a.m., Ferand departed from Grams in Crab Orchard, Lincoln County, Kentucky, where his wife, Apryl Dillingham ("Apryl"), had been employed as a general laborer and cashier for approximately two to three months. In her deposition, Apryl testified that Ferand drove her to work earlier that morning. Upon arrival, Ferand waited to purchase gas while his wife entered the store to assume her work duties. Apryl states that Grams' owner, Mark Fitzpatrick ("Fitzpatrick"), was in the back preparing the store's morning breakfast items. She recalled Fitzpatrick announcing that the store was out of sausage. In response, Apryl offered to have Ferand go to the Wal–Mart in Danville to buy some sausage for the store. Apryl took $20.00 from the store register, went outside, and made the errand request of her husband.

Apryl states that she took the initiative in asking Ferand to go on the errand, and that Fitzpatrick had little to do with it. Fitzpatrick states that he does not recall any discussion with Apryl about Ferand doing the errand, but Apryl informed him about it afterwards. He also acknowledged that there may have been prior occasions where on-the-clock store employees asked spouses or friends to run errands for the store.

The investigating officer, Trooper Clyde Bertram, testified in his deposition that he traveled from the scene of the accident to Grams to notify Apryl of her husband's death. He recalled that both Apryl and Fitzpatrick stated that Ferand was on an errand to buy sausage for the store. Furthermore, Trooper Bertram testified that Fitzpatrick said that he had advised Ferand to be careful because it was raining. However, Trooper Bertram was unable to recall where this alleged exchange with Fitzpatrick occurred.

Based upon these undisputed facts, the trial court concluded that no agency relationship existed between Ferand and Grams. Although Ferand was clearly running an errand for his wife and, by extension, Grams, the trial court found no evidence that Grams exercised any control over Ferand or the manner in which he performed the errand. Consequently, the trial court determined that summary judgment was appropriate since the Brookses could not prevail as a matter of law.

In reviewing a motion for summary judgment, a trial court must consider all

---

**1.** The Brookses' other claims are apparently still pending.

stipulations and admissions on file. Kentucky Rules of Civil Procedure ("CR") 56.03. Summary judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991), *citing Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky.1985). "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996), *citing* CR 56.03. "There is no requirement that the appellate court defer to the trial court since factual findings are not at issue." *Scifres, supra, citing Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378, 381 (Ky.1992).

The trial court and the parties focus on whether Ferand was an agent of Grams. The parties agree that Ferand was never an employee of Grams. Nevertheless, the Brookses contend that Ferand was acting as an agent for Grams at the time of the accident. But while this question is relevant, it is not the controlling issue in this case.

■ The absence of an employment relationship between Grams and Ferand does not preclude a finding that Ferand was acting as Grams' agent. Likewise, the fact that Ferand volunteered his services does not preclude a finding that he was acting as Grams' agent. *Fournier v. Churchill Downs–Latonia*, 292 Ky. 215, 166 S.W.2d 38, 40 (1942). *See also Warrener v. Federal Land Bank of Louisville*, 266 Ky. 668, 99 S.W.2d 817, 820 (1936). The question of agency always concerns the nature of the relationship at the time the injury occurred. *Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755,

756 (Ky.1955). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 50 (Ky.2003), *quoting CSX Transportation, Inc. v. First National Bank of Grayson*, 14 S.W.3d 563, 566 (Ky.App.1999).

Under the facts of this case, the bare bones of agency law may support a finding that an agency relationship existed between Grams and Ferand, either as a gratuitous agent or as a sub-agent of Grams, appointed by Grams' agent Apryl. *Standard Oil Co. v. Adams*, 271 Ky. 221, 111 S.W.2d 668, 669 (1937). *See also Louisville & Nashville Railroad Co. v. Vaughn's Transfer Co.*, 123 S.W. 253 (Ky.1909). Furthermore, there is evidence that Fitzgerald ratified Apryl's act, at least after the fact. Under such circumstances, a principal may be bound by the contract executed by its agent, even if the agent did not have the authority to employ persons.

■ However, a finding of agency under these facts addresses the liability of the principal to the sub-agent, not the liability of the principal for the negligent acts of a sub-agent. The central issue in this case is whether Grams may be held liable for Ferand's negligence under the doctrine of *respondeat superior*. The rule of *respondeat superior* embodies the theory that where one acts through the agency of another, in legal contemplation, he is himself acting and thus is responsible for acts of his agent. "[W]hen an agent fails in any duty which he owes to a third party or the public generally, the principal is responsible for the failure." *Smith v. Smith*, 333 S.W.2d 503, 504 (Ky.1960). Under such circumstances, an employer is strictly liable for damages resulting from the tortious acts of his employees. *Patter-*

*son v. Blair,* 172 S.W.3d 361, 364 (Ky. 2005).

█ The right to control is considered the most critical element in determining the principal's liability for the tortious acts of an agent. *Phelps, supra,* at 50, *citing CSX Transportation, supra,* at 566–67. Other factors in determining whether an agency relationship exists include:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer; and

(i) whether or not the parties believe they are creating the relationship of master and servant.

*Sam Horne Motor & Implement Co. v. Gregg, supra,* at 756–57, *quoting* RESTATEMENT (SECOND) OF AGENCY § 220(2). *See also* RESTATEMENT (THIRD) OF AGENCY § 7.06(3) and Comment f (2005).

█ Arguably, the facts of this case satisfy three of these factors. While Ferand was not an employee of Grams, the task being performed is of a type which would have been performed by either Fitzpatrick himself or someone working under his direct employ. Given the size of the business, Fitzpatrick would not have hired an independent contractor to purchase sausage for the store. And while Ferand took his own car to purchase the sausage, Apryl gave Ferand money from the store for the purchase. Therefore, Fitzpatrick, through his agent Apryl, supplied one of the instrumentalities necessary to perform the work. And finally, it can be reasoned that purchasing sausage for preparation and sale is part of the regular business of Grams.

But under the circumstances of this case, the presence of three of the nine factors outlined in *Sam Horne Motor & Implement Co. v. Gregg, supra,* is not sufficient to impose liability upon Grams for the Ferand's negligence. Apart from supplying the money, neither Grams nor Fitzpatrick exercised any control over how Ferand performed the task. Ferand drove his own vehicle, chose the route he traveled, and could have decided not to complete the errand without any direct consequences from Grams. Grams cannot be liable for Ferand's negligence in the absence of any showing that it exercised control over him or the instrumentality which caused the injuries. *See Shedd Brown Mfg. Co. v. Tichenor,* 257 S.W.2d 894, 897 (Ky.1953).

The Brookses also point out that there was evidence that Fitzpatrick advised Ferand to be careful because it was raining, and that Fitzpatrick knew that Ferand had a tendency to drive too fast. They also note Fitzpatrick's admission that spouses and friends of on-the-clock employees may have run similar errands in the past. However, the test for liability under the doctrine of *respondeat superior* hinges upon the degree of control which the principal exercises over the agent or sub-

agent. *See also Wright v. State of New Jersey,* 169 N.J. 422, 778 A.2d 443, 451–52 (2001); and *Nicholas v. Moore,* 570 P.2d 174, 176 (Alaska 1977). The disputed facts do not address this critical issue.

Finally, we note that there are important social and economic considerations to imposing vicarious liability upon a principal for the negligence of a volunteer such as Ferand. A finding of liability under such circumstances could impact "such common social accommodations as car pooling and running errands, as well as the provision of gratuitous services to persons such as the elderly, by imposing unforeseeable, uncontrollable and potentially uninsured liability upon the beneficiaries of such services without significant concomitant gain." *Newman v. Isuzu Motors America, Inc.,* 367 N.J.Super. 141, 842 A.2d 255, 258–59 (N.J.Super.A.D.2004). While such policy considerations are not controlling, they are relevant given the lack of evidence supporting a finding that Grams exercised any control over Ferand. Thus, as a matter of law, Grams cannot be liable for damages caused by Ferand's negligence, and the trial court properly granted summary judgment for Grams on this issue.

Accordingly, the judgment of the Lincoln Circuit Court is affirmed.

CAPERTON, Judge, Concurs.

KELLER, Judge, Concurs and Files Separate Opinion.

KELLER, Judge, Concurring:

While I agree with the holding of the majority I feel compelled to write that I do not share the same concerns of the majority regarding the potential imposition of vicarious liability. I believe the factors outlined in *Sam Horne, supra,* as applied to social circumstances such as carpooling and assisting the elderly would not compel

a result of vicarious liability. Furthermore, just as important is the social policy concern over businesses engaging non-employees for (gratuitous) services which otherwise would be performed by employees. The policy concern that a business could potentially shield itself from liability in this manner is just as troubling as the potential imposition of vicarious liability.