RENDERED: FEBRUARY 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0274-MR

KELSEY WITT                                                                          APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 21-CI-006086

XHALE SALON AND SPA,
ASSUMED NAME OF PLAN B, LLC                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND EASTON, JUDGES.

EASTON, JUDGE: The Appellant, Kelsey Witt ("Kelsey"), seeks reversal of the Jefferson Circuit Court's order granting summary judgment to the Appellee, Xhale Salon and Spa, an assumed name of Plan B, LLC ("Xhale"). Kelsey sued Xhale alleging she was touched inappropriately by a massage therapist, Adrian Sims ("Sims"), during a massage session at Xhale.

Kelsey claimed Xhale was negligent in hiring and retaining Sims. Kelsey also believes that Xhale was negligent based on violation of statutes requiring a Kentucky license for a massage therapist and prohibiting advertising for services by persons not licensed. Kelsey also asserted Xhale's vicarious liability for Sims' actions.

In granting summary judgment to Xhale, the circuit court found Sims to be an indispensable party not named by Kelsey, and thus the court could not grant complete relief to the parties involved. Related to the indispensable party issue, the circuit court concluded that the one-year statute of limitations to add Sims as a defendant had expired. Finally, the court determined any intentionally tortious actions by Sims were an unforeseeable, superseding cause, relieving Xhale of any liability. Having reviewed the record and the applicable law, we affirm the result reached by the circuit court but do so for reasons other than those relied upon by the circuit court.

**FACTUAL AND PROCEDURAL HISTORY**

Xhale is a salon and spa located in the Galt House Hotel in Louisville. Xhale provides services of a typical salon, including hair styling, as well as spa services, such as facials and full-body massages. Xhale retains both employees and independent contractors to perform the various services in the spa.

On October 2, 2021, Kelsey and her husband, Aaron Witt ("Aaron"), decided to celebrate their anniversary. They checked into the Galt House as overnight guests. Kelsey and Aaron scheduled a "couple's massage" at Xhale for 4:45 PM. Sims and Tonya Hubbard ("Hubbard") were the massage therapists assigned to perform the Witts' massages in the same room. Sims was to massage Kelsey, and Hubbard was to massage Aaron. Kelsey claims that, during her massage, Sims "placed his hands, several times, on [Kelsey's] genitals and genital region." Kelsey alleges this touching occurred around 6:00 PM.

Aaron approached the front desk of the Galt House around 7:00 PM and filed an incident report. Hotel security officers Luke Geraghty ("Geraghty") and Keion Biggers ("Biggers") met the Witts in their hotel room. Kelsey reported that "the worker who was giving her massage was a man named Adrian[.]" Kelsey said "he had been massaging both of her legs when he went higher and touched her private area." After taking Kelsey's statement of events, Geraghty and Biggers provided the Witts with the telephone number of the Louisville Metro Police Department ("LMPD").

Geraghty and Galt House front desk manager Moses Turk went to Xhale and met with its manager, Tiffany Abell ("Abell"). Abell advised them she was aware of the incident. Abell stated Sims "admitted going close and touching

the private area by accident." Abell further said Sims immediately apologized to Kelsey and informed Abell of the matter.

Around 10 PM, Kelsey filed an Incident/Investigation Report with the Louisville Metro Police Department ("LMPD") alleging third-degree sexual abuse, although the record contains no evidence of charges ever being brought. Kelsey reported to LMPD that "the masseuse then began massaging her upper thigh and then began to touch her vagina." She went on to say she "assumed it was an accident, but the masseuse continued to touch her on the vagina approximately 4-5 times" and that "he began massaging more aggressive[ly] when he was touching her vagina."

Kelsey and her husband checked out of the Galt House the following morning on October 3, 2021. Upon checking out, the Witts made no mention of the previous night's incident. Their entire stay was "comped" by the Galt House. The Witts did not pay for the hotel stay or the massage.

Prior to filing her Complaint, Kelsey's attorney sent a letter dated October 12, 2021, to Xhale regarding the incident on October 2. The letter asserted Kelsey "was assaulted by an Xhale employee named Adrian." The letter asked for a response from Xhale within seven days or Kelsey would file suit. On October 20, counsel for Xhale replied to Kelsey's letter. Xhale's counsel stated the

name of the massage therapist in question was Adrian Sims, and that Sims was an independent contractor.

Kelsey filed her Complaint on October 25, 2021. She named Xhale as a defendant, but not Sims. Despite the prior disclosure of Sims' name, the Complaint referenced Sims as a massage therapist known only as "Adrian." Kelsey alleged Sims' conduct to be negligent, grossly negligent, reckless, and/or deliberate. As previously indicated, Kelsey sought liability against Xhale only and through multiple theories.

The parties conducted discovery. During the discovery process, Kelsey was provided with Sims' full name, address, social security number, and birthday. Kelsey filed an Amended Complaint on March 8, 2022. The Amended Complaint added a negligence *per se* claim against Xhale. The Amended Complaint once again only referred to Sims as a massage therapist "known only as 'Adrian.'" The Amended Complaint still did not name Sims as a defendant.

Xhale filed its Motion for Summary Judgment on October 15, 2022. In support of its Motion, Xhale argued the following: 1) Kelsey failed to name an indispensable party (Sims) as a defendant, and that the one-year statute of limitations to do so had expired; 2) the alleged assault by Sims was an intervening,

superseding criminal act that relieved Xhale of liability; and 3) Kelsey signed a waiver of liability prior to receiving the massage.[1]

Oral arguments on Xhale's Motion were held on January 23, 2023. By Order entered on January 31, 2023, the circuit court granted the Motion and dismissed Kelsey's Amended Complaint. The circuit court ruled that the alleged sexual assault was an intervening, superseding action relieving Xhale of liability. The circuit court also ruled the failure of Xhale to verify Sims' licensure did not constitute a negligent act that Xhale could have reasonably foreseen would have led to the alleged sexual assault of Kelsey.

Finally, the circuit court ruled Sims was an indispensable party to the action, and that Kelsey had failed to name him as a defendant within the one-year statute of limitations. The court found it unnecessary to address the parties' argument pertaining to whether Sims' relationship with Xhale was that of employee or independent contractor. This appeal followed.

**STANDARD OF REVIEW**

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as

---

[1] The circuit court did not address the effect of the waiver. We also find it unnecessary as we have found no negligence to which the waiver might have applied.

a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (internal quotation marks and citations omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007). This Court may sustain the summary judgment for any reason supported by the record and is not confined to the conclusions reached by the circuit court. *Kentucky Farm Bur. Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991).

## ANALYSIS

To evaluate whether summary judgment was proper we must evaluate every claim asserted and see whether any evidence could support the claim. We recognize overlapping questions which must be considered in this case. First, was the touching by Sims intentional or accidental? This difference determines for what tort Sims and thus Xhale may be liable. Second, was Sims an independent contractor or an employee of Xhale? This status impacts vicarious liability as well as the potential for a claim of negligence in hiring or training. There are also questions of Xhale's direct negligence liability for alleged violations of statutes.

The answers to all these questions also determine whether Sims was an indispensable party.

Kelsey's primary assertion is that Sims intentionally assaulted her. By the time summary judgment was granted, Kelsey had all but abandoned any claim of accidental touching as is evidenced by the jury instructions she tendered. We should still examine this claim as it was made in the pleadings.

We then start with the possibility that the touching was accidental or negligent. There is no such thing as an accidental or negligent battery. A battery requires intentional touching. A sexual assault is a battery, and a battery "is an intentional tort; it is not committed by a negligent act." *Vitale v. Henchey*, 24 S.W.3d 651, 656 (Ky. 2000) (footnotes omitted). If Sims' touching of Kelsey's genitals was accidental during the massage, there is no sexual assault.

Kentucky allows recovery for negligent infliction of emotional distress. To prove this tort, Kelsey would first have to establish negligent actions by Sims. In the context of a massage, she would have to show that the unintentional touching breached the standard of care provided by massage therapists. Due to the nature of massage, which often involves touching near sensitive areas, that may have been quite difficult to do, and there was no effort to do so in this case.

Even if Kelsey could establish negligence in the touching itself, she could not establish negligent infliction of emotional distress. This tort requires more than the expected level of emotional response to an unwanted touching. The law requires expert proof of severe emotional impact of the negligence. *See Keeney v. Osbourne*, 399 S.W.3d 1, 17-18 (Ky. 2012). In her deposition just prior to the granting of summary judgment, Kelsey admitted that she had seen no psychiatrist, psychologist, counselor, minister, or any kind of medical provider because of this event.

We leave behind any issue of liability if Sims' actions were accidental or negligent. So, the question becomes what liability there can be if Kelsey could prove Sims intentionally sexually assaulted her. Of course, Sims could be held accountable, but he was never sued. We next look at potential liability of Xhale for this sexual assault, whether that liability could be vicarious or direct.

Whether Sims was an employee, or an independent contractor impacts that determination. "[A] principal is vicariously liable for damages caused by torts of commission or omission of an agent or subagent, other than an independent contractor, acting on behalf of and pursuant to the authority of the principal." *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). An individual is the agent of another if the principal has the power or responsibility to control the method, manner, and details of the agent's work. *Nazar v. Branham*,

291 S.W.3d 599, 606-07 (Ky. 2009). "As a general rule, an employer is not liable for the torts of an independent contractor in the performance of his job." *Miles Farm Supply v. Ellis*, 878 S.W.2d 803, 804 (Ky. 1994).

Kelsey asserts that Sims was Xhale's employee for whom Xhale is vicariously liable, as opposed to an independent contractor for whom Xhale has no vicarious liability. The circuit court did not address whether Sims's relationship with Xhale was that of an employee or independent contractor. Whether Sims is an employee or independent contractor may be a matter of law based on the undisputed circumstances of record. *See Everett v. Edelin*, 672 S.W.3d 196 (Ky. App. 2023).

The traditional common law factors used to determine whether a worker is an employee, or an independent contractor, are outlined in Restatement (Second) of Agency § 220(2). 672 S.W.3d at 201. These factors are:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Id.* "No one of the aforementioned factors is determinative, and each case where it must be determined whether an individual is an employee or independent contractor should be resolved on its own facts." *Id.*

Factor (a) of the analysis considers the extent of control which, by the agreement, the master exercises over the details of the work. Xhale has a set list of optional massage services, and there is no evidence that Sims was allowed to perform services outside this set list. Further, Abell was in charge of making the schedule for all therapists, including Sims. Abell stated guests were assigned to massage therapists by order, and that there was no difference in assigning guests to

Sims, whom Xhale considered to be an independent contractor, and assigning guests to Xhale employees. Abell testified Sims could not accept payment for the performance of a massage without the payment being processed through the Xhale cash register. Abell testified she was not sure why Sims was characterized as an independent contractor. Factor (a) leans towards Sims' being an employee of Xhale.

Factor (b) asks whether the one employed is engaged in a distinct occupation or business. Sims was engaged in an occupation – that of massage therapist, but massage therapy was the same business in which Xhale was engaged. Factor (b) leans towards Sims' being an employee of Xhale.

Factor (c) considers the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision. There is no indication in the record whether massage therapists in the Louisville area work under the direction of an employer or without supervision. It may be that massage therapists are often retained as independent contractors. If so, a level of independence is to be expected and documented, which is not apparent in this record. No conclusive information is offered on this point, and we will consider factor (c) as neutral.

Factor (d) considers the skill required in the particular occupation. Comment *i.* of Restatement (Second) of Agency § 220(2) states, "Unskilled labor

is usually performed by those customarily regarded as servants." Massage therapy in Kentucky is clearly considered skilled labor as KRS[2] 309.350, *et seq.*, outlines the professional and licensing requirements to perform massage therapy. Factor (d) may lean towards Sims' being an independent contractor.

Factor (e) asks whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work. Abell testified Xhale provided the necessary materials for Sims to perform massages, including the table, towels, blankets, lotion, *etc*. There is no conflicting evidence to this assertion. Factor (e) leans towards Sims' being an employee of Xhale.

Factor (f) considers the length of time for which the person is employed. Sims had been hired for approximately nine months and had performed approximately 600 massages before the incident on October 2, 2021. Sims was clearly hired to frequently perform massages for Xhale, and not as a limited engagement; therefore, factor (f) leans towards Sims' being an employee of Xhale.

Factor (g) considers the method of payment to the worker, whether by the time or by the job. Comment *j*. of Restatement (Second) of Agency § 220(2) considers payment by the job to be indicative of an independent contractor. There is no evidence in the record of how Sims was paid, so this factor is neutral.

---

[2] Kentucky Revised Statutes.

Factor (h) considers whether the work is a part of the regular business of the employer. Sims was performing massage therapy services for Xhale, a salon in which massage therapy is a core part of the business. Xhale advertises it provides massage therapy. Factor (h) leans towards Sims' being an employee of Xhale.

Factor (i) asks whether the parties believe they are creating the relationship of master and servant. Both Abell and Xhale owner, Melissa Happell ("Happell"), testified they subjectively thought they were engaging Sims as an independent contractor. Factor (i) leans towards Sims' being an independent contractor, although we emphasize that simply saying someone is an independent contractor does not make it so.

Factor (j) asks whether the principal is or is not in business. The principal, Xhale, is a business entity licensed in the state of Kentucky to provide salon services, including massage therapy. Factor (j) leans towards Sims' being an employee of Xhale.

Considering the above factors, we believe Sims could be considered as Xhale's employee, rather than an independent contractor. Yet we recognize there is probably more information about the details of the arrangement than what is in this record that may have led to the opposing conclusion. We do not wish to establish in this case any bright line rule for the use of independent contractors by

massage providers.  If that is desired, the foregoing factors must be considered and addressed by the parties.  But for our further analysis we will assume Sims was an employee, the conclusion most beneficial to Kelsey's case.  We now analyze Kelsey's vicarious liability claim.

Kelsey argues Xhale is liable for the actions of Sims under the doctrine of *respondeat superior*, a form of vicarious liability.  This doctrine provides the legal rationale for holding a master responsible for a tort committed by his servant, his employee.  *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky. 2005).  This doctrine states that, where a master acts through the agency of another, the master himself is acting and thus is responsible for acts of his agent.  *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 211 (Ky. App. 2008).  "[W]hen an agent fails in any duty which he owes to a third party or the public generally, the principal is responsible for the failure."  *Smith v. Smith*, 333 S.W.2d 503, 504 (Ky. 1960).  Liability of the master depends on whether the servant was guilty of negligence in performing the master's work and whether the master had the right or power to control the servant in the performance of the act which caused the injury.  *Horne v. Hall*, 246 S.W.2d 441, 443 (Ky. 1951).

"[A] master is liable for the <u>negligent</u> acts or omissions of his servant while acting as such and <u>within the scope of his employment</u>."  *Horne*, *supra*, at 443 (emphasis added).  As we have eliminated the potential of Sims' liability for

-15-

any negligent act, we must look at Kelsey's claim of intentional conduct – a sexual assault.

An employer's vicarious liability is limited to its employees' actions committed in the scope of the employment. An employee committing sexual assault against a client would not be an action committed in the scope of the employment. "[A]n employer is not vicariously liable for an intentional tort of an employee not actuated by a purpose to serve the employer but motivated, as here, solely by a desire to satisfy the employee's own sexual proclivities." *Am. Gen. Life & Acc. Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002). There is no vicarious liability for Xhale in this case. We can now move on to the direct negligence claims against Xhale.

Kelsey argues Xhale is liable for its negligent hiring, training, and supervision of Sims. Kentucky has not recognized negligence in hiring independent contractors. *See Miles*, *supra*. If Sims were an independent contractor, this claim must fail. With Sims as an employee, "[T]he established law in this Commonwealth recognizes that an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998) (summary judgment precluded as there was a genuine issue of fact whether floor cleaning company was negligent in hiring an employee

-16-

who sexually assaulted a co-worker). The distinction between vicarious liability and a negligent hiring or retention claim is that vicarious liability is based upon the employer/employee relationship and imposes strict liability, whereas negligent hiring or retention focuses on the direct negligence of the employer which permitted an otherwise avoidable circumstance to occur. *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 6 (Ky. App. 2018).

The elements for the tort of negligent hiring or retention are as follows: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed; and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citation omitted).

As part of her negligent hiring claim, Kelsey argues Xhale was aware Sims did not have a license to practice message therapy in Kentucky at the time he was hired in March 2021, and in October 2021, when he was assigned to Kelsey's massage. Kelsey contends Sims was practicing massage therapy at Xhale without a valid Kentucky license in violation of KRS 309.353(1).[3] Consequently, Kelsey believes Xhale's advertisements were in violation of KRS 309.353(3) by

---

[3] No person shall practice massage therapy or hold himself or herself out to be a massage therapist unless the person meets the educational and licensing requirements of KRS 309.358 and 309.360 and holds a valid license that has not been suspended or revoked.

-17-

inaccurately representing Sims as a licensed massage therapist by omission of the fact that he was not.

Sims was hired by Xhale in March 2021. Sims was interviewed by Abell, and he was ultimately approved by Happell. Abell testified Sims advised her that he was in the process of transferring his massage therapy license from Kansas to Kentucky, so she allowed him to perform massages on clients. According to the Kentucky Board of Licensure for Massage Therapy, Sims never applied for a Kentucky license. Abell stated she probably would not have allowed Sims to perform a massage on Kelsey had she known Sims never applied for a Kentucky license.

While it is arguable Xhale should have known Sims was unlicensed, Kelsey cannot satisfy the foreseeability requirement necessary to maintain the negligent hiring claim. "Foreseeable risks are determined in part on what the defendant knew at the time of the alleged negligence." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 90 (Ky. 2003).

Xhale conducted a criminal background check on Sims, which came back clear. Consequently, there was no information for Xhale to have reasonably foreseen Sims would commit a sexual assault on Kelsey. Kelsey offered no evidence of prior indications of sexual assault concerns that Xhale might have discovered through other investigation.

According to Happell, Sims performed 600 massages at Xhale before the events of October 2, 2021, and he had no prior complaints about his services. Since Sims had for so long adequately and so frequently performed his job duties, Xhale could not have reasonably foreseen Sims' alleged intentional assault on the date of the incident. The circuit court properly dismissed Kelsey's negligent hiring claim.

The issue of Sims' licensure is also part of Kelsey's negligence *per se* claim. This claim may have applied whether Sims was an employee or an independent contractor because it does not require an employee status. The common law doctrine of negligence *per se* is a negligence claim with a statutory standard of care, instead of a common law standard of care. *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. App. 2008).

KRS 446.070 codifies the concept of negligence *per se* in Kentucky: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." This statute creates a private right of action for a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy, if the person damaged is within the class of persons the statute intended to be protected. *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005).

The negligence *per se* claim fails as a matter of law as Xhale's failure to ensure Sims' licensure would not have prevented an unwanted touching. This touching was not "by reason of" the statutory violation. There must be a causative effect. It may be true that if Xhale knew Sims was not licensed, then it would not have hired Sims. But this is "but-for" causation or cause-in-fact. This does not satisfy the requirement of proximate causation. *See Lewis v. B & R Corporation*, 56 S.W.3d 432 (Ky. App. 2001).

"Failure to comply with the terms of a statute is negligence *per se.* However, in an action for damages, the violation of the statute must be the proximate cause of the injury to permit recovery." *Est. of Wheeler v. Veal Realtors & Auctioneers, Inc.*, 997 S.W.2d 497, 498 (Ky. App. 1999). Kelsey failed to show causation between Sims' lack of a Kentucky license and Sims' allegedly having improperly touched her without her consent.

The circuit court correctly found "the failure of Xhale Salon to verify Adrian Sims's licensure status does not constitute a negligent act that Xhale Salon could have reasonably foreseen would lead to the alleged sexual assault of Plaintiff." Our courts have previously rejected the notion that license status alone is evidence of negligence. *See Rentschler v. Lewis*, 33 S.W.3d 518 (Ky. 2000) (in action for personal injuries sustained in motor vehicle collision, *prima facie*

negligence instruction was not warranted, on basis that defendant's driver's license was under suspension, as evidence of suspension was irrelevant).

We have found no Kentucky case which addresses the specific facts found here. But at least one jurisdiction has been called upon to consider this argument about a lack of a valid license of a massage therapist. In *Tomsic v. Marriot International, Inc*., 739 S.E.2d 521 (Ga. App. 2013), a plaintiff sexually assaulted by a massage therapist at a hotel claimed negligence because of allowing massages by an unlicensed person. "The fact that Marriott allowed Sumner to give massages before he obtained his business license is irrelevant to whether it knew or should have known that Sumner had any propensities to inflict harm." *Id*. at 531.

This again recognizes a requirement for a negligence claim that the act is a proximate cause of the harm. The lack of a license does not make it foreseeable to Xhale that there was any propensity for violence on the part of Sims, including a risk of sexual assault. In any event, Kelsey could not establish actionable negligence by Xhale in the circumstances presented in this case. It is for this reason we must affirm the summary judgment. Finally, we will take some time to address the issue of whether Sims was an indispensable party.

Kelsey argues the circuit court erred in its determination that Sims was an indispensable party. CR[4] 19.01 outlines the process of joining necessary parties to an action:

> A person who is subject to service of process, either personal or constructive, shall be joined as a party in the action if (a) in his absence complete relief cannot be accorded among those already parties, or (b) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

CR 19.02 sets forth factors in determining whether a party unable to be joined is "indispensable" to maintaining an action:

> If a person as described in Rule 19.01 cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispens[a]ble. The factors to be considered by the court include: (a) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (b) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice

---

[4] Kentucky Rules of Civil Procedure.

can be lessened or avoided; (c) whether a judgment rendered in the person's absence will be adequate; (d) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The circuit court ruled Sims was an indispensable party to the action as it could not grant complete relief among the two parties, Kelsey and Xhale. The court further reasoned that a jury trial without Sims as a named defendant "would result in a jury verdict that is inconsistent with the facts of this case." The court reckoned it impossible for a jury to apportion fault without the presence of Sims as a party. The court concluded any jury decision would be inadequate under the law.

If we look first at vicarious liability, Sims was not an indispensable party. There are several vicarious liability or negligent hiring cases that proceeded without the subject employee as a defendant. *Ten Broeck Dupont, Inc.*, *supra*;[5] *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556 (Ky. 2013);[6] *Cohen v. Alliant Enterprises, Inc.* 60 S.W.3d 536 (Ky. 2001).[7]

If the question became evaluation of Sims' liability as compared to negligence by Xhale, then apportionment may have been called for. If Kelsey

---

[5] A psychiatric hospital employee alleged to have raped a patient was not named as a defendant in the patient's negligent hiring claim against the hospital. The employee was added later by the hospital as a third-party defendant, but he was dismissed prior to trial.

[6] Assault victim assaulted by truck driver brought action against driver's employer, but not the driver himself.

[7] Vicarious liability suit against principal allowed to proceed despite the agent escaping liability by virtue of the statute of limitations.

-23-

failed to name Sims as a party, apportionment may have been accomplished by another party bringing Sims into the case just for that purpose. *See Dix & Associates Pipeline Contractors, Inc. v. Key*, 799 S.W.2d 24 (Ky. 1990). Even if the direct claim against Sims was barred by the statute of limitations, apportionment could have occurred. *See Prudential life Ins. Co. v. Moody*, 696 S.W.2d 503 (Ky. 1985). Sims was not an indispensable party.

## CONCLUSION

If Sims was an independent contractor, Xhale had no vicarious liability for his negligent acts. As an employee, Sims could create vicarious liability for his negligent acts, but not for intentional tortious acts, which by their nature are not within the scope of the employment.

Xhale could have its own liability for an intentional act by Sims if such harm was foreseeable due to negligence in hiring or retaining Sims. Although couched in terms of superseding and intervening cause, the circuit court correctly ruled that the alleged sexual assault did not result in liability for Xhale, but the actual reason is that Xhale could not have foreseen a sexual assault from what it knew about Sims at the time of the assault. The circuit court was correct in ruling that the failure of Xhale to verify Sims' licensure alone did not sustain a negligence claim. Lack of a Kentucky license did not make a sexual assault

foreseeable. Summary judgment was proper. The Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.


BRIEF FOR APPELLANT:

Casey A. Krill
Louisville, Kentucky

BRIEF FOR APPELLEE:

Paul R. Schurman, Jr.
Makenzie Ackermann
Louisville, Kentucky